**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| NASH HOSPITALS, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 25-cv-00038 |
| | Hon. Louise Wood Flanagan |
| UNITED HEALTHCARE OF NORTH CAROLINA, INC.; UNITED HEALTHCARE INSURANCE COMPANY OF THE RIVER VALLEY; and UNITED HEALTHCARE INSURANCE COMPANY, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND THE CASE TO THE NORTH CAROLINA GENERAL COURT OF JUSTICE, SUPERIOR COURT DIVISION**

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1
II.  FACTUAL BACKGROUND...................................................................................2
  A.  The 340B Program ............................................................................ 2
  B.  Prescription Drug Pricing Under the OPPS ..................................................... 2
  C.  CMS' Improper Payment Reduction .......................................................... 3
  D.  CMS' 2023 Supplemental Guidance Provides for a Second Prospective Payment.4
  E.  Medicare Advantage Organizations........................................................ 4
  F.  UNC Health Nash's Agreement with Defendants .................................... 5
  G.  Defendants Refuse to Correct Underpaid 340B Drug Claims ............................ 5
  H.  Procedural History ........................................................................ 6
III.  LEGAL STANDARD .......................................................................................6
IV.  ARGUMENT ...................................................................................................8
  A.  The Court Lacks Federal Question Jurisdiction Over These State-Law Disputes.. 8
      1.  *The Purported Federal Issue Is Not "Necessarily Raised."*..................... 10
      2.  *The Purported Federal Issue Is Not "Actually Disputed."* ..................... 13
      3.  *The Purported Federal Issue Is Not "Substantial."* ................................ 14
      4.  *Exercising Jurisdiction Over UNC Health Nash's Claims Would Disturb the Balance of Federal and State Judicial Power.* ................................ 16
  B.  The Court Should Decline to Exercise Supplemental Jurisdiction Over Any of UNC Health Nash's Claims. .................................................... 18
V.  CONCLUSION..................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
    596 U.S. 724 (2022)..............................................................................................2, 3, 4, 14

*Am. Hosp. Ass'n v. Becerra*,
    No. 18-cv-02084, 2022 WL 4534617 (D.D.C. Sept. 28, 2022)................................................4

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
    736 F. Supp. 3d 169 (S.D.N.Y. 2024)...................................................................................15

*Arrington v. City of Raleigh*,
    369 Fed. App'x 420 (4th Cir. 2010) .....................................................................................18

*Barbour v. Int'l Union*,
    594 F.3d 315 (4th Cir. 2010) ................................................................................................6

*Burrell v. Bayer Corp.*,
    918 F.3d 372 (4th Cir. 2019) ........................................................................................ *passim*

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)...............................................................................................................8

*Corley v. Vance*,
    365 F. Supp. 3d 407 .............................................................................................................18

*Dixon v. Coburg Dairy, Inc.*,
    369 F.3d 811 (4th Cir. 2004) .........................................................................................10, 12

*Eastman v. Marine Mech. Corp.*,
    438 F.3d 544 (6th Cir. 2006) ................................................................................................9

*Empire Healthchoice Assur., Inc. v. McVeigh*,
    547 U.S. 677 (2006)...........................................................................................12, 14, 15, 17

*In re Estate of Tabas*,
    879 F. Supp. 464 (E.D. Pa. 1995) .........................................................................................8

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)...................................................................................................7, 16, 17

*Gunn v. Minton*,
    568 U.S. 251 (2013)...................................................................................................... *passim*

*Hagans v. Lavine*,
    415 U.S. 528 (1974)................................................................................13

*Hill v. Pikeville Med. Ctr., Inc.*,
    No. 16-cv-00276, 2017 WL 690535 (E.D. Ky. Feb. 21, 2017) ...................................... *passim*

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)..................................................................................6

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ......................................................................7, 10, 16

*McGilvra v. Ross*,
    215 U.S. 70 (1909)..................................................................................13, 14

*Merrell Dow Pharms., Inc. v. Thompson*,
    478 U.S. 804 (1986)..................................................................................7, 17

*Mulcahey v. Columbia Organic Chems. Co.*,
    29 F.3d 148 (4th Cir. 1994) ........................................................................6, 8, 12

*NYU Langone Hosps. v. UnitedHealthcare Ins. Co.*,
    No. 24-cv-04803, 2025 WL 252454 (S.D.N.Y. Jan. 21, 2025) ...................................... *passim*

*RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*,
    395 F.3d 555 (5th Cir. 2004) ......................................................................12, 14, 15

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*,
    875 F.3d 584 (11th Cir. 2017) ......................................................................12

*Vick v. UNC Health Nash Hosps., Inc.*,
    756 F. Supp. 2d 690 (E.D.N.C. 2010)..............................................................8, 18

*Vlaming v. West Point Sch. Bd.*,
    10 F.4th 300 (4th Cir. 2021) ......................................................................10

**Statutes**

28 U.S.C. § 1331...........................................................................................6, 7, 17

28 U.S.C. § 1367...........................................................................................6

28 U.S.C. § 1367(a) .......................................................................................8, 18

28 U.S.C. § 1441(a) .......................................................................................6

42 U.S.C. § 1395*l*(t)......................................................................................2

42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)......................................................................2, 3

iii

42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II) ...................................................................3

42 U.S.C. § 1395w-3a ...........................................................................................3

42 U.S.C. 1395w-25(b)(4) .....................................................................................4

Medicare Act .......................................................................................................12

**Other Authorities**

88 Fed. Reg. 77150 ................................................................................................4

88 Fed. Reg. at 77155-56 ......................................................................................5

88 Fed. Reg. at 77156-67 ......................................................................................4

88 Fed. Reg. at 77184 ..........................................................................................11

Plaintiff Nash Hospitals, Inc. ("UNC Health Nash") respectfully submits this Memorandum in Support of Plaintiff's Motion to Remand the Case to the North Carolina General Court of Justice, Superior Court Division ("Motion") and in response to the Notice of Removal filed by Defendants UnitedHealthcare Insurance Company of the River Valley, UnitedHealthcare of North Carolina, Inc., and UnitedHealthcare Insurance Company, Inc. (collectively, "United" or "Defendants") in this action.

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

As both parties recognize, this is fundamentally a breach of contract case involving a private agreement between UNC Health Nash and United.  *See* ECF No. 1, ¶ 2 ("Notice of Removal"); *see also generally* ECF No. 1-1 ("State Court Complaint").  UNC Health Nash's other theories of liability stem from its breach of contract claim.  *See* State Court Complaint, ¶¶ 40, 44, 50, 65, 72-74, 79-81, 88-90 (premising liability on United's failure to properly pay UNC Health Nash for services rendered to United's members).

UNC Health Nash does not challenge the validity of any federal statute, rule, or regulation, nor does UNC Health Nash assert any right to relief under federal law.  *See generally* State Court Complaint.  Further, there are no federal dollars at stake. *See infra* Section IV.A.1.  And because the parties' agreement is unique between them, the outcome of this litigation will only directly affect UNC Health Nash and United.  *See infra* Section IV.A.3.  It is true that the parties' agreement refers to a federally promulgated payment schedule; however, federal courts have held this to be insufficient to create a federal question.  *See infra* Section IV.A.1.  **Moreover, a federal district court recently remanded a nearly identical breach of contract claim asserted by another provider against United**.  *See NYU Langone Hosps. v. UnitedHealthcare Ins. Co.*, No. 24-cv-04803, 2025 WL 252454, *1-3 (S.D.N.Y. Jan. 21, 2025).  This Court should adopt the Southern District of New York's approach, as allowing United's removal to stand would risk enormous

1

disruption of the division of labor between the federal and state judiciary and would open the floodgates to removal of many state law claims. *See infra* Section IV.A.4.

At bottom, this is a straightforward dispute about payment terms in a private agreement. Thus, the Court should remand this action to the North Carolina General Court of Justice, Superior Court Division, where it was originally filed. The references to Federal law in the payment terms are references to **settled** Federal law, as described below.

## II.  FACTUAL BACKGROUND

### A.  The 340B Program

The 340B drug pricing program ("340B Program") is designed to protect eligible hospitals from escalating prescription drug prices. *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 730 (2022). It allows participating hospitals—including UNC Health Nash—to acquire certain prescription drugs from manufacturers at discounted rates, enabling those hospitals to provide comprehensive critical care services to "uninsured and underinsured in low-income and rural communities." *See id.* at 730, 731; State Court Complaint, ¶¶ 19-22.

### B.  Prescription Drug Pricing Under the OPPS

The Department of Health and Human Services ("HHS") administers the Medicare program, including the 340B Program, through the Centers for Medicare and Medicaid Services ("CMS"). For services rendered to members of "original" or "traditional" Medicare—*i.e.*, Medicare Parts A and B—CMS reimburses hospitals according to the Outpatient Prospective Payment System ("OPPS"). 42 U.S.C. § 1395*l*(t).

For prescription drugs, CMS may set OPPS reimbursement rates in one of two ways. Under Option 1, CMS may conduct a survey of hospitals' "acquisition costs" for each covered drug and set reimbursement rates based on the average cost. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I); *see also id.* § 1395*l*(t)(14)(D) (requirements for conducting surveys of hospitals' drug acquisition

2

costs). Where an acquisition cost survey is conducted, CMS may set different reimbursement rates for different "hospital group[s]." *Id.* § 1395*l*(t)(14)(A)(iii)(I); *see also Am. Hosp. Ass'n*, 596 U.S. at 728. In other words, CMS may differentiate between 340B and non-340B hospitals under Option 1.

Option 2 applies where CMS has not conducted a survey of hospitals' acquisition costs. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II). Under Option 2, CMS must set reimbursement rates based on "the average price" charged by manufacturers for the drug, as "calculated and adjusted by the Secretary as necessary[.]" *Id.*; *see also Am. Hosp. Ass'n*, 596 U.S. at 729. The statute sets "the average price" at 106 percent of the drug's average sales price ("ASP"). 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II) (citing 42 U.S.C. § 1395w-3a); *Am. Hosp. Ass'n*, 596 U.S. at 729. Notably, under Option 2, CMS cannot set different rates for 340B and non-340B hospitals. *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II); *Am. Hosp. Ass'n*, 596 U.S. at 729.

### C.    CMS' Improper Payment Reduction

For years, CMS uniformly set OPPS prescription drug reimbursement rates at 106% of the drug's ASP and did not set different reimbursement rates for 340B and non-340B hospitals (under Option 2). *See Am. Hosp. Ass'n*, 596 U.S. at 729. But in 2018, CMS abruptly cut the OPPS prescription drug reimbursement rates for 340B hospitals to ASP minus 22.5%, *i.e.*, a 30% reduction. *Id.* at 729-31. Critically, CMS did so without surveying hospitals' acquisition costs. *Id.* at 729.

In response, the American Hospital Association (along with two other hospital industry groups and several hospitals) filed suit against CMS, alleging the rate reductions had unlawfully deprived 340B hospitals of roughly $1.6 billion annually. *Id.* at 731-32. Eventually, the case came before the Supreme Court, which unanimously held that CMS exceeded its authority by setting different reimbursement rates for 340B and non-340B hospitals, rendering the rate reductions

3

unlawful. *Id.* at 725; State Court Complaint, ¶ 25. The Supreme Court then remanded the case to the district court, which vacated the OPPS reimbursement rate for 340B hospitals in the calendar year 2022 OPPS final rule, prospectively restoring the default reimbursement rate of 106% of ASP for 340B and non-340B hospitals. *Am. Hosp. Ass'n v. Becerra*, No. 18-cv-02084, 2022 WL 4534617, at *5 (D.D.C. Sept. 28, 2022). However, the district court did not address the unlawful rate reductions against 340B hospitals from January 1, 2018 to September 27, 2022 (the "Improper Payment Period"). 88 Fed. Reg. 77150, 77185 (Nov. 8, 2023).

> **D.    CMS' 2023 Supplemental Guidance Provides for a Second Prospective Payment.**

Subsequently, on November 8, 2023, CMS issued subsequent guidance (the "2023 Supplemental Payment Guidance") requiring a second, prospective payment to balance out the underpayments applicable to the Improper Payment Period. 88 Fed. Reg. at 77150; State Court Complaint, ¶ 27. The Supplemental Payment Guidance announced that CMS would make one-time, lump-sum payments to 340B hospitals (including UNC Health Nash) equal to "the difference between what they were paid for 340B drugs" during the Improper Payment Period and "what they would have been paid had the [unlawful] 340B Payment Policy not applied." 88 Fed. Reg. at 77156-67; State Court Complaint, ¶ 27.

> **E.    Medicare Advantage Organizations**

Under Medicare Advantage (also known as Medicare Part C), private health insurers—like Defendants here—contract with CMS to offer benefit plans to Medicare-eligible beneficiaries. State Court Complaint, ¶¶ 13-14. These private health insurers are known as Medicare Advantage Organizations ("MAOs"). *Id.* at ¶ 13. MAOs commonly enter private contracts with health care providers, like UNC Health Nash, to provide services to their members. *See* 42 U.S.C. § 1395w-25(b)(4); State Court Complaint, ¶ 15. Among other terms, these contracts include negotiated

reimbursement rates for covered services, just like their contracts covering commercial insureds do. *Id.* at ¶ 16.

### F.     UNC Health Nash's Agreement with Defendants

UNC Health Nash participates in Defendants' benefits plans under a Facility Participation Agreement (the "Agreement"), which was effective June 1, 2001, and has been subject to several amendments. *Id.* at ¶ 5. Under the Agreement, UNC Health Nash provides health care services to Defendants' members in exchange for reimbursement by Defendants at negotiated rates. *Id.* at ¶ 16. For all pharmaceuticals purchased under the 340B Program and provided to Defendants' members in a UNC Health Nash hospital outpatient department, the Agreement provides that Defendants will reimburse UNC Health Nash at a percentage of the rate required to be paid for such pharmaceuticals under the Medicare program. *Id.* at ¶ 21. Under the Medicare program, those pharmaceuticals are reimbursed under OPPS, which, as explained above, is the statutorily mandated outpatient prospective payment system. Notice of Removal, ¶ 27. CMS rules and CMS' methodology are therefore the rules and methodology that the statute allows CMS to employ as a government agency whose authority is circumscribed by law. In light of the *AHA* decision and the 2023 Supplemental Payment Guidance, applicable law allows only one payment rate, and that is ASP plus 6%. United does not, and cannot, disagree with that premise.

### G.     Defendants Refuse to Correct Underpaid 340B Drug Claims

CMS issued the 2023 Supplemental Payment Guidance in November 2023, thereby causing lump-sum payments to 340B hospitals to be made as part of the 2024 payment cycle. 88 Fed. Reg. at 77155-56. But despite having agreed to reimburse UNC Health Nash at the same rate that CMS is required by OPPS laws to reimburse the hospital—Defendants have refused to make corresponding payments.

## H.     Procedural History

On November 22, 2024, UNC Health Nash commenced an action in the North Carolina General Court of Justice, Superior Court Division, bringing claims for breach of contract, specific performance, declaratory relief, unfair competition, breach of fiduciary duty, constructive fraud, and breach of the duty of good faith and fair dealing.  *See generally* State Court Complaint; *see also* Notice of Removal, ¶ 4.  On January 27, 2025, United removed the case to the U.S. District Court for the Eastern District of North Carolina, alleging federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  *See* Notice of Removal.

## III.     LEGAL STANDARD

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States" (*i.e.*, federal question jurisdiction).  28 U.S.C. § 1331.  As a corollary, 28 U.S.C. § 1441(a) allows for removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  But it is well-settled that federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

"Because removal jurisdiction raises significant federalism concerns," courts "must strictly construe removal jurisdiction."  *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *Burrell v. Bayer Corp.*, 918 F.3d 372, 380-81 (4th Cir. 2019); *Barbour v. Int'l Union*, 594 F.3d 315, 326 (4th Cir. 2010).  If federal jurisdiction is doubtful, a remand will be necessary.  *Mulcahey*, 29 F.3d at 151; *Barbour*, 594 F.3d at 326.  To that end, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal."  *Mulcahey*, 29 F.3d at 151 (citation omitted); *Burrell*, 918 F.3d at 380-81.  "Any doubt" as to the existence of federal jurisdiction "is

6

resolved against [the defendant], which bears the burden of establishing jurisdiction." *See Burrell*, 918 F.3d at 384, 388.

Where, as here, a complaint pleads only state law causes of action, there is only a "slim category of cases" for which federal question jurisdiction will still exist under 28 U.S.C. § 1331 because "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 208 (4th Cir. 2022) (quotations and citations omitted). The Fourth Circuit has warned that "courts must be 'cautious' exercising this form of jurisdiction because it lies at the 'outer reaches of § 1331.'" *Id.* (citations omitted).

As a method to ensure complaints alleging solely state law claims are not in federal court when they merely implicate federal issues, the Supreme Court established a four-prong test to determine the existence of federal question jurisdiction in such circumstances. *Id.* at 209. Under that test, "[f]ederal-question jurisdiction exists over a state-law claim if a federal issue is: '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress'" (the "*Grable-Gunn* Test"). *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). This is ***not*** a balancing test; therefore, jurisdiction lies only "where all four of these requirements are met." *Gunn*, 568 U.S. at 258. This is a restrictive standard, and as the Supreme Court has made clear, the "mere presence of a federal issue in a state cause of action ***does not automatically*** confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (emphasis added) (citations omitted). So "if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then

7

federal subject matter jurisdiction does not exist." *Mulcahey*, 29 F.3d at 153 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811 (1988)).

Separately, the supplemental jurisdiction statute "authorizes a federal court to hear state-law claims that, independently, would not satisfy subject matter jurisdictional requirements, provided the overall action contains at least one claim that does satisfy the requirement [of] original jurisdiction." *Vick v. UNC Health Nash Hosps., Inc.*, 756 F. Supp. 2d 690, 692 (E.D.N.C. 2010) (citing 28 U.S.C. § 1367(a)). It is "not 'an independent source of removal jurisdiction.'" *Vick*, 756 F. Supp. 2d at 693 (quoting *In re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995)).

## IV. <u>ARGUMENT</u>

Defendants cannot carry their burden as to ***any*** of the four prongs in the *Grable-Gunn* Test; thus, there is no federal question jurisdiction. Moreover, because supplemental jurisdiction is "not an independent source of removal jurisdiction," *Vick*, 756 F. Supp. 2d at 693, supplemental jurisdiction cannot prevent remand. Therefore, the Court should remand this action to state court.

### A. <u>The Court Lacks Federal Question Jurisdiction Over These State-Law Disputes</u>.

Given that UNC Health Nash has raised only state-law claims in this action, Defendants have the burden to show that a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, ***and*** (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 568 U.S. at 258. Here, Defendants cannot carry their burden as to any of the four prongs of that *Grable-Gunn* Test, let alone all four.

To attempt to carry their burden, Defendants contend that UNC Health Nash's claims necessarily raise a federal issue. *See* Notice of Removal, ¶¶ 11-30. But Defendants' position rests on the false premise that, to prevail, UNC Health Nash "must prove that United violated Medicare rules and regulations." *Id.* at ¶ 24. In reality, Medicare law merely provides a framework for

8

explaining how payment terms in the Agreement that cross-reference terms in Medicare law are to be interpreted. *See* State Court Complaint, ¶¶ 12-33. It is the way the terms are used in the Agreement that matters, and not some question regarding whether United generally complies with whatever Medicare laws apply to it directly. Thus, to prevail on its claims, UNC Health Nash need only prove that Defendants failed to honor the negotiated reimbursement rates contained in the Agreement. The simple fact that such rates are tied to a federal benchmark does not transform a straightforward state law claim into a federal question. *See, e.g.*, *Hill v. Pikeville Med. Ctr., Inc.*, No. 16-cv-00276, 2017 WL 690535, at *4 (E.D. Ky. Feb. 21, 2017) ("Were the Court to keep this case simply because [the] contract mentions [Work Relative Value Units], then any contract tying compensation to that national benchmark would all of a sudden raise a federal issue. . . . By the same logic, ***any*** contract tying compensation to ***any*** national benchmark (like the Consumer Price Index) would become federalized, too. That would mark a 'dramatic shift' in the balance of state and federal judicial power." (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2006)) (emphasis in original)).

More to the point, **the U.S. District Court for the Southern District of New York recently remanded a nearly identical breach of contract claim asserted by a provider against United**. *NYU Langone*, 2025 WL 252454, at *1-3. The court found the provider's claims arose under state law and would have "no binding impact on future interpretation of any federal statute or rule" and further that the "statute and rules governing reimbursement of 340B hospitals are tangential to the core dispute and hence insubstantial." *Id.* at *2. So, too, here, the outcome of this matter will have no bearing on how courts, Federal or otherwise, interpret the provisions of the Agreement insofar as original Medicare is concerned.

9

Thus, as in *NYU Langone*, federal question jurisdiction does not exist for any of the state-law claims that UNC Health Nash has raised.

### 1. *The Purported Federal Issue Is Not "Necessarily Raised."*

To meet the first prong of the *Grable-Gunn* Test, United must establish that UNC Health Nash's state-law claims "hinge on the determination of a federal issue." *Vlaming v. West Point Sch. Bd.*, 10 F.4th 300, 306 (4th Cir. 2021). That is, a federal issue must be a "'necessary element' of one of the pleaded state-law claims" within UNC Health Nash's complaint. *Mayor & City Council*, 31 F.4th at 209 (quoting *Burrell*, 913 F.3d at 381). As a corollary, the Fourth Circuit has recognized that "*every* legal theory" supporting a state-law claim must "require[] the resolution of a federal issue." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (citations omitted) (emphasis in original). If each of UNC Health Nash's claims is supported by at least one state-law theory that does not require recourse to federal law, then those claims do not "arise under" federal law—even if an alternative federal-law theory existed that could separately prove liability. *Burrell*, 918 F.3d at 383 (citations omitted).

United's Notice of Removal mischaracterizes UNC Health Nash's claims in an attempt to manufacture a federal issue. But UNC Health Nash's State Court Complaint is clear that its rights to relief are a creature of contract and intertwined state law, all of which turns on the proper interpretation of the parties' Agreement. The validity of the 2023 Supplemental Payment Guidance is not at issue. Rather, UNC Health Nash merely asserts that the 2023 Supplemental Payment Guidance triggered United's *contractual* obligation to follow CMS' actions. A court need not resolve any federal issue to determine whether the Agreement imposes this obligation on United (or whether failure to abide by that obligation constitutes a breach of contract, an unfair or deceptive act, a breach of fiduciary duty, constructive fraud, or a breach of the duty of good faith and fair dealing). In fact, in the 340B Final Rule, CMS explicitly stated:

10

> CMS may not require MAOs to contract with a particular healthcare
> provider or use particular pricing structures with their contracted
> providers. Therefore, MAOs that contract with a provider or facility
> for eligible 340B drugs can negotiate the terms and conditions of
> payment directly with the provider or facility and CMS cannot
> interfere in the payment rates that MAOs set in contracts with
> providers and facilities.

88 Fed. Reg. at 77184.

United recognizes that this is essentially a breach of contract case. *See* Notice of Removal, ¶ 2. But in an attempt to conjure federal question jurisdiction, United mistakenly asserts that "UNC Health Nash must prove that United violated Medicare rules and regulations." *Id.* at ¶ 24. United's mistaken assertion comes from the fact that the reimbursement rates at issue in the Agreement are tied to a federal benchmark—CMS' OPPS. *See* State Court Complaint, ¶¶ 20-21. But the fact that a contractual reimbursement rate is tied to a federal benchmark does not transform a straightforward state law claim into a federal question. *See, e.g.*, *Hill*, 2017 WL 69035, at *4 ("[Plaintiff] has merely pled claims relating to a contract that references a unit of measurement [Work Relative Value Units] that a federal agency happens to promulgate. To resolve any claims involving [this unit of measurement] a court would not need to answer a substantial question of federal law"). Under United's flawed jurisdictional theory, any dispute involving mere reference to any federal benchmark would necessarily raise a federal issue. Such a result would directly

11

implicate the "significant federalism concerns" that courts consider in strictly construing removal jurisdiction. *Mulcahey*, 29 F.3d at 151.[1]

United's Notice of Removal also makes much of UNC Health Nash's "repeated[] references [to] federal law" and UNC Health Nash's assertion that United's actions "violate the Agreement **and** applicable law." Notice of Removal, ¶¶ 13, 23 (emphasis in original). United contends that, as a result, UNC Health Nash's claims arise "at least in part on the alleged violation of federal law[.]" *Id.* at ¶ 14. But this contention misconstrues UNC Health Nash's allegations. UNC Health Nash does **not** rely on any federal theory; rather, it contends that United's failure to make UNC Health Nash whole runs afoul of the parties' Agreement and the **state**—not federal— law, which governs the interpretation of the Agreement.

Even assuming *arguendo* that United were correct in its contention that UNC Health Nash's claims arise "at least in part on the alleged violation of federal law," *id.*, it is black-letter law that where, as here, a plaintiff's claims are independently supported by a state-law theory that does not require recourse to federal law, those claims do not "arise under" federal law. *Burrell*, 918 F.3d at 383 (citations omitted); *Dixon*, 369 F.3d at 816; *Mulcahey*, 29 F.3d at 153. It is of no moment whether certain of UNC Health Nash's claims arguably have a federal-law theory (even though they do not), because each of UNC Health Nash's claims is supported by an independent

---

[1] Notably, there are no federal dollars at stake in this matter—this is simply a payment dispute between parties to a private contract. And such disputes do not create a federal question. *See, e.g.*, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 680, 698 (2006) (finding no federal jurisdiction over claim purportedly arising under Federal Employees Health Benefits Act of 1959 ("FEHBA"), because FEHBA did not encompass "contract-based reimbursement claims"); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) ("A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act."); *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 558 (5th Cir. 2004) (finding no federal-question jurisdiction because "[i]rrespective of who ultimately prevails, the government will not receive or pay out funds. The dispute is solely between [the MAO] and [the provider] and is based on the parties' privately-agreed-to payment plan").

state-law theory. Specifically, UNC Health Nash asserts that United—having contractually agreed to tie payments under the Agreement to CMS' OPPS payments—breached the Agreement when it failed to issue supplemental payments to UNC Health Nash after CMS made supplemental payments under original Medicare ("Breach of Contract Claim"). *See NYU Langone*, 2025 WL 252454, at *2 (finding no federal question existed where a provider disputed a nearly identical provision in another United MAO-Provider agreement). And each of UNC Health Nash's other claims has a state-law theory based on that Breach of Contract Claim. *See* State Court Complaint, ¶¶ 40, 44, 50, 65, 72-74, 79-81, 88-90 (premising liability on United's failure to properly pay UNC Health Nash for services rendered to United's members).

For all these reasons, the Court should find that UNC Health Nash's claims do not "necessarily raise" a federal issue. On this ground alone, the case is ripe for remand to state court.

### 2. The Purported Federal Issue Is Not "Actually Disputed."

The second prong of the *Grable-Gunn* Test requires United to show that the federal issue is "the central point of dispute between the parties." *Gunn*, 568 U.S. at 258. The Supreme Court has long held that a federal issue will not generate federal-question jurisdiction where the issue is "no longer open to discussion." *McGilvra v. Ross*, 215 U.S. 70, 80 (1909); *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing *McGilvra* for the same).

Here too, United relies on the mistaken notion that UNC Health Nash's claims are premised on a violation of federal law, rather than a breach of contract. *See* Notice of Removal, at ¶¶ 24-25. United's position fails for all the reasons set forth at Section IV.A.1, *supra*. United ignores that UNC Health Nash's State Court Complaint alleges the 2023 Supplemental Payment Guidance triggered a contractual obligation on the part of United, and that United failed to comply with that duty, which led to underpayments (and, in turn, violated not only the Agreement, but various **state** statutes and duties). *See generally* State Court Complaint.

13

Setting United's mistaken assertions aside, there can be no actual dispute here because the federal "issues" United points to—the Supreme Court's holding in *Am. Hosp. Ass'n v. Becerra* and the 340B Final Rule—are "no longer open to discussion." *McGilvra*, 215 U.S. at 80. UNC Health Nash and United do not actually dispute the Supreme Court's holding or the 2023 Supplemental Payment Guidance. What they actually dispute is whether, as a matter of contract interpretation, the Agreement requires United to make UNC Health Nash whole for underpaying it during the Improper Payment Period by virtue of incorporating CMS' OPPS as a benchmark for payments. In other words, the parties dispute United's compliance with payment obligations under a private contract governed by state law. This is not a federal question. *See, e.g.*, *Empire*, 547 U.S. at 680; *RenCare*, 395 F.3d at 558; *NYU Langone*, 2025 WL 252454, at *2; *Hill*, 2017 WL 690535, at *2, 4 (each concluding that no federal question jurisdiction existed where the plaintiff's ultimate relief was contract-based).

For all these reasons, the Court should find that any federal issue is not "actually disputed" and remand to state court.

### 3. The Purported Federal Issue Is Not "Substantial."

Even if United could show that UNC Health Nash's state-law claims necessarily raise some disputed federal issue (they do not), United must still show that the federal issue is "substantial," indicating a "serious federal interest in sending the case to a federal forum[.]" *Burrell*, 918 F.3d at 384 (quotations and citation omitted). Courts have recognized that substantiality presents a "high bar" for a defendant seeking to remove claims. *Id.* at 385. For a federal issue to be substantial, it is not enough that the issue be significant to the particular parties in an immediate suit. *Gunn*, 568 U.S. at 260. What matters for substantiality is "the importance of the issue to the federal system as a whole." *Id.* In contrast to cases implicating broad consequences for the federal system, cases that are "'fact-bound and situation-specific' (such as cases involving the

14

administration of private contracts) 'are not sufficient to establish federal [question] jurisdiction.'" *Id.* at 263 (quoting *Empire*, 547 U.S. at 701).

Contrary to United's suggestion, UNC Health Nash's claims do not "implicate[] the reimbursement schemes created by Medicare law" because UNC Health Nash does not seek direct payment under any Medicare rule or regulation. Notice of Removal, ¶ 27. Instead, UNC Health Nash seeks payment under its Agreement, and therefore, its claims only implicate the "privately-agreed-to payment plan" between UNC Health Nash and United. *RenCare*, 395 F.3d at 558. Because this case hinges on the interpretation of a private contract, it raises no issues that "could potentially affect the hundreds of [MAOs] that have contracted with CMS," each with their own unique payment terms. Notice of Removal, ¶ 27. The Agreement between UNC Health Nash and United is unique to the parties in this lawsuit and thus, the outcome of this case will have few—if any—ramifications for other cases involving standalone contracts between other MAOs and health care providers. *See NYU Langone*, 2025 WL 252454, at *2 (holding the same on a similar contract); *Empire*, 547 U.S. at 701 (finding no substantial federal question because plaintiff's contract-based reimbursement claim was "fact-bound and situation-specific"); *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 736 F. Supp. 3d 169, 181 (S.D.N.Y. 2024); (finding no substantial federal question where the dispute involved "the parties' interpretation of a *sui generis* contract"); *Hill*, 2017 WL 690535, at *3-4 (finding no substantial federal question in contract dispute involving application of a federal standard).

**Notably, the U.S. District Court for the Southern District of New York recently weighed in on the substantiality of an alleged federal issue in another case where a provider filed suit against United in state court for breach of contract based on nearly identical language to the provisions at issue in the Agreement between UNC Health Nash and United.**

15

*See NYU Langone*, 2025 WL 252454, at \*1-3.  In holding that it lacked subject matter jurisdiction, the district court found that the provider's claims arose under state law and would have "no binding impact on future interpretation of any federal statute or rule" and further that "[t]he statute and rules governing reimbursement of 340B hospitals are tangential to the core dispute and hence insubstantial."  *Id.* at \*2.

Here, as in *NYU Langone*, the Court should find that, to the extent that any federal issue is necessarily raised or actually disputed, such issue is not substantial.  *See id.*  On this ground alone, the case is ripe for remand to state court.

### 4. Exercising Jurisdiction Over UNC Health Nash's Claims Would Disturb the Balance of Federal and State Judicial Power.

It follows from the foregoing that the fourth prong of the *Grable-Gunn* Test is also not met. *Gunn*, 568 U.S. at 264.  This fourth prong exists "to strike a balance between federal and state judicial responsibilities," by requiring the federal court to "give[] leeway to States in areas where they possess 'special responsibility[ies].'"  *Mayor & City Council*, 31 F.4th at 209 (quoting *Gunn*, 568 U.S. at 264).  And given that "plaintiffs so commonly incorporate an alleged violation of federal standards into 'garden variety state tort law' complaints" regarding federally regulated products and services, courts have warned that a "'general rule of exercising federal jurisdiction in those cases would herald[] a potentially enormous shift of traditionally state cases into federal courts.'"  *Burrell*, 918 F.3d at 386 (quoting *Grable*, 545 U.S. at 318-19).  So too with participation agreements between health care providers and MAOs, which commonly incorporate federal benchmarks into their payment terms.

United asserts that its jurisdictional theory "would not open the doors of the federal courts whenever a breach of contract claim is related to Medicare claims."  Notice of Removal, ¶ 29 (citation omitted).  But this assertion is dubious as United's theory would arguably create a federal

16

issue for any dispute involving contractual terms tied to federal benchmarking. Courts have cautioned against such an expansive interpretation of 28 U.S.C. § 1331. *See, e.g.*, *Empire*, 547 U.S. at 701 (holding no federal jurisdiction over a contract-based reimbursement dispute, and noting "it is hardly apparent why a proper federal-state balance would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum"); *Burrell*, 918 F.3d at 387 ("[T]here is no indication that Congress intended to divert a multitude of fact-intensive, state-law suits against medical device manufacturers to federal court."); *Hill*, 2017 WL 690535, at *4 ("[P]arties do not establish federal jurisdiction simply through referring to a federally promulgated payment schedule in their contracts.").

United relies on *Grable* to support its argument on the fourth prong of the *Grable-Gunn* Test. *See* Notice of Removal, ¶¶ 28-29. In doing so, however, United fails to acknowledge that the case at issue is far more analogous to precedent that holds defendants failed to make the required showing under the fourth prong. *See Burrell*, 918 F.3d at 386. In *Burrell*, the Fourth Circuit distinguished *Grable* (dealing with quiet title actions, which "only rarely raise substantial questions of federal law") from *Merrell Dow* (dealing with "garden variety state tort" actions involving federally regulated products—pharmaceuticals). *Id.* at 387 (citations omitted). The Fourth Circuit recognized that "[e]xercising federal jurisdiction" over all "garden variety state tort" actions involving federally regulated products "would risk enormous disruption to the division of judicial labor, with a 'tremendous number of cases' shunted from state to federal court." *Id.* at 387 (citations omitted). Thus, given that *Burrell* dealt with state tort claims over medical devices, the Fourth Circuit determined that the defendant could not make the showing required under the fourth prong of the *Grable-Gunn* Test. *Id.* at 385-87. As in *Burrell* and *Merrell Dow*, this case presents garden variety state-law claims involving federally regulated pharmaceuticals. *Id.* at 387; *Merrell*

*Dow*, 478 U.S. at 811-12. Finding federal jurisdiction here would risk a flood of cases being "shunted from state to federal court." *Burrell*, 918 F.3d at 387.

For all the reasons set forth here and in Sections IV.A.1-3, *supra*, the Court should find that United cannot carry its burden under the *Grable-Gunn* Test and remand this action to state court.

**B.       The Court Should Decline to Exercise Supplemental Jurisdiction Over Any of UNC Health Nash's Claims.**

Assuming the Court finds no federal question jurisdiction exists over UNC Health Nash's claims—as UNC Health Nash contends it should—the Court should decline to exercise supplemental jurisdiction over any of UNC Health Nash's claims. *See, e.g.*, 28 U.S.C. § 1367(a) (allowing for supplemental jurisdiction over claims only where "the district courts have original jurisdiction"); *Arrington v. City of Raleigh*, 369 Fed. App'x 420, 423 (4th Cir. 2010) (noting that Fourth Circuit precedents "evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction"); *Vick*, 756 F. Supp. 2d at 692 (noting the supplemental jurisdiction statute "authorizes a federal court to hear state-law claims that, independently, would not satisfy subject matter jurisdictional requirements, provided the overall action contains at least one claim that does satisfy the requirement [of] original jurisdiction." (citing 28 U.S.C. § 1367(a)); *Corley v. Vance*, 365 F. Supp. 3d 407, 462-63 ("[G]iven that only state-law issues remain in this case, comity dictates that the Court decline to decide those disputes"). Supplemental jurisdiction is "not an independent source of removal jurisdiction," *Vick*, 756 F. Supp. 2d at 693; thus, absent federal question jurisdiction, the Court should remand this lawsuit to the state court from whence it came.

## V.     <u>CONCLUSION</u>

For all the foregoing reasons, UNC Health Nash respectfully requests that the Court issue

an Order remanding this action to the North Carolina General Court of Justice, Superior Court

Division, and granting such other and further relief as the Court deems just, equitable, or proper.

Dated: April 7, 2025                                          **K&L GATES LLP**

*/s/ Gary S. Qualls*
Gary S. Qualls
N.C. State Bar No. 16798
gary.qualls@klgates.com
Nate A. Huff
N.C. State Bar No. 40626
nate.huff@klgates.com
Anderson M. Shackelford
N.C. State Bar No. 49510
anderson.shackelford@klgates.com
430 Davis Drive
Morrisville, NC 27560
Telephone: (919) 466-1195
Facsimile: (919) 516-2072

*Counsel for Plaintiff Nash Hospitals, Inc.*

19

# RULE 7.2(f) CERTIFICATION

I attest that the foregoing brief contains 5,774 words—as calculated by the word processing software used to compose this brief—and therefore complies with the word limitation set forth in Local Civil Rule 7.2(f).

*/s/ Gary S. Qualls*
Gary S. Qualls