IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-38-FL

| | |
|---|---|
| NASH HOSPITALS, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| UNITEDHEALTHCARE OF NORTH CAROLINA, INC.; UNITEDHEALTHCARE INSURANCE COMPANY OF THE RIVER VALLEY; and UNITED HEALTHCARE INSURANCE COMPANY, | )<br>)   ORDER<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

This matter is before the court on plaintiff's motion to remand (DE 17). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

### STATEMENT OF THE CASE

Plaintiff commenced this action November 22, 2024, in the General Court of Justice, Superior Court Division, Nash County, North Carolina ("Nash County Superior Court"), asserting the following claims against defendants, who are affiliated insurance companies (collectively, "United")[1]: 1) breach of contract, 2) specific performance, 3) declaratory judgment, 4) unfair and deceptive claims settlement practices, 5) unfair and deceptive practices and methods of

---

[1] Hereinafter, for ease of reference, the court refers to defendants collectively as a singular entity, United, where distinguishing defendants individually is not pertinent to the instant analysis.

competition, 6) breach of fiduciary duty, 7) constructive fraud, and 8) breach of good faith and fair dealing. Plaintiff seeks declaratory relief, damages, restitution, fees, interest and costs.

United filed notice of removal January 27, 2025, asserting federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1357(a), on the basis that "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." (Notice of Removal (DE 1) at 5).

Upon the parties' joint motion, the court stayed United's deadline to respond to the complaint pending resolution of the instant motion, which was briefed in accordance with the schedule set by the court.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff "owns and operates a hospital system and related services in and around Nash County, North Carolina." (Compl. (DE 1-1) ¶ 1). Plaintiff and United are parties to a "certain Hospital Participation Agreement ('Agreement')," allegedly governing rates for reimbursement to plaintiff for "claims for pharmaceuticals that were purchased under the federal 340B drug purchasing program (the '340B Program')."[2] (Id. ¶¶ 5, 19).

Plaintiff provides the following "factual background" concerning the Agreement and its relation to the Medicare program:

> As an alternative to traditional Medicare, eligible individuals may instead elect to enroll in "Medicare Advantage," also known as Medicare Part C. Medicare Advantage is a Medicare-approved plan administered by a private company-known as a Medicare Advantage Organization ("MAO")-that provides health and drug

---

[2] The complaint does not describe the origin of the phrase "340B Program." The United State Supreme Court has noted that "Section 340B of the Public Health Services Act, 42 U.S.C. § 256b . . . imposes ceilings on prices drug manufacturers may charge for medications sold to specified health-care facilities." Astra USA, Inc. v. Santa Clara Cnty., Cal., 563 U.S. 110, 113 (2011). Such "Section 340B hospitals . . . generally serve low-income or rural communities." Am. Hosp. Ass'n v. Becerra, 596 U.S. 724, 727 (2022).

2

> coverage to such individuals on behalf of the Centers for Medicare and Medicaid Services ("CMS").
>
> [United] serves as an MAO pursuant to a contract it maintains with CMS ([United's] "MAO Agreement").
>
> As an MAO, [United] maintains various Medicare Advantage plans, through which [United] administers Medicare benefits on behalf of CMS to individuals who have elected to enroll in such plans in lieu of enrolling in traditional Medicare ([United's] "Medicare Advantage Program").
>
> Providers such as Plaintiff provide health care services to members of [United's] network-including individuals enrolled in [United's] Medicare Advantage Program-through provider agreements such as the Agreement.
>
> As an MAO, [United] is obligated to pay contracted providers, such as Plaintiff, the rates agreed to in the Agreement.

(Id. ¶¶ 12-16). Plaintiff asserts that United breached the Agreement in the following manner:

> [F]rom 2018 through 2022, during the Agreement's applicability (the "Improper Discount Period"), [United] improperly and unilaterally discounted payments for certain of Plaintiff's claims at its covered hospitals.
>
> [United] thus owes Plaintiff for underpayments under the Medicare Advantage Program during the Improper Discount Period.

(Id. ¶¶ 17-18). Plaintiff alleges the following additional details regarding the terms of the Agreement and the manner of alleged breach. Under the Agreement, United "is required to reimburse Plaintiff for outpatient services, including pharmaceuticals purchased under the 340B Program and used in a hospital outpatient department, as a percentage of the rate required to be paid under the Medicare program." (Id. ¶ 21). "Under the 340B Program, claims for certain pharmaceuticals are reimbursed under the Medicare program at a rate of the average sales price ('ASP') plus 6%." (Id. ¶ 20). "During the Improper Discount Period, however, [United] improperly reimbursed Plaintiff for these claims predicated on an ASP minus 22.5% (the 'Improper Payment Reduction') instead of ASP plus 6%." (Id. ¶ 22). As such, according to

3

plaintiff, United "has systematically underpaid Plaintiff in violation of the Agreement and applicable law." (Id. ¶ 23).

Plaintiff alleges the purported "rationale[]" advanced by United for its actions allegedly constituting a breach of the Agreement as follows:

> During the Improper Discount Period, [United] applied the Improper Payment Reduction to Plaintiff's reimbursement for 340B drugs under the following faulty rationales: (a) [United] assumed that CMS properly applied the same Improper Payment Reduction in the fee-for-service Medicare program; and (b) [United] thus incorrectly believed it could likewise impose the Improper Payment Reduction under the Agreement's terms.

(Id. ¶ 24).

According to plaintiff, "CMS's imposition of the Improper Payment Reduction was determined to be unlawful," in Am. Hosp. Ass'n v. Becerra, 596 U.S. 724 (2022), and thereafter CMS "declared the Improper Payment Reduction to be an 'unlawful 340B Payment Policy.'" (Id. ¶¶ 25-26) (quoting 88 Fed. Reg. 77150, 77152 (Nov. 8, 2023)). CMS allegedly elected to remedy this error by "making a lump-sum payment to affected hospitals" to make up the difference. (Id. ¶ 27).

According to plaintiff, "[b]ecause [United's] actions purport to derive directly from CMS's admittedly unauthorized actions, [United's] actions also violate the Agreement and applicable law." (Id. ¶ 28). Allegedly "[a]s a result of [United's] improper interpretation of the Agreement, [United] has underpaid Plaintiff for Medicare Advantage members' 340B drugs for the Improper Discount Period." (Id. ¶ 29). According to plaintiff, United "has no authority, in law or in the Agreement, to underpay Plaintiff in this manner." (Id. ¶ 30). "Plaintiff's calculated arrearages in this regard are at least $1.6 million." (Id. ¶ 33).

4

## COURT'S DISCUSSION

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).[3] "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

B.  Analysis

Plaintiff argues that the court lacks subject matter jurisdiction because the complaint fails to raise a substantial question of federal law. The court agrees.

"[F]ederal-question jurisdiction enables federal courts to decide cases founded on federal law." Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 26 (2025). "A suit most typically falls within that statutory grant when federal law creates the cause of action asserted." Id. "On rare occasions, the grant also covers a suit containing state-law claims alone, because one or more of them necessarily raises a substantial and actually disputed federal question." Id. "Federal courts must be cautious in exercising this form of jurisdiction because it lies at the outer reaches of § 1331." Mayor & City Council of Baltimore v. BP P.L.C., 31 F.4th 178, 208 (4th Cir. 2022).

"The mere presence of a federal issue in a state cause of action is not, by itself, enough to confer federal question jurisdiction." Vlaming v. W. Point Sch. Bd., 10 F.4th 300, 306 (4th Cir.

---

[3] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

2021). "Instead, a federal issue in a state law claim must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id.

Under the first prong, which is determinative here, "[a] federal question is necessarily raised under § 1331 only if it is a necessary element of one of the well-pleaded state claims." Mayor & City Council of Baltimore, 31 F.4th at 209. "A federal question is not necessarily raised under § 1331 unless it is essential to resolving a state-law claim, meaning that every legal theory supporting the claim requires the resolution of a federal issue." Burrell v. Bayer Corp., 918 F.3d 372, 383 (4th Cir. 2019). "If, on the other hand, each of the . . . claims is supported by a state-law theory that does not require recourse to federal law, then that claim does not arise under federal law — even if the [plaintiff] allege[s] an alternative federal-law theory that also could prove liability." Id.

Here, a federal question is not a necessary element of any of plaintiff's claims. The breach of contract and specific performance claims turn upon "the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 363 N.C. 623, 631 (2009). The obligations of the parties to be "gathered from [the Agreement's] four corners," by "using the plain meaning of the written terms." Ussery v. Branch Banking & Tr. Co., 368 N.C. 325, 336 (2015). Whether or not the parties intended to tie United's obligations under the Agreement to a federal standard, as plaintiff alleges, is a question of the parties' intent and relationship, and not an issue of federal law. (See Compl. ¶¶ 16, 21, 24, 28, 29). Plaintiff's remaining claims similarly arise out of United's breach of obligations related to the Agreement and the parties' business relationship, and do not require resolution of an issue of federal law. (See id. ¶¶ 44-46, 54-59, 65-69, 72, 79, 88-89); see, e.g., King v. Bryant, 369 N.C. 451, 464 (2017) (stating "a fiduciary relation exists as a fact, in

which there is confidence reposed on one side and the resulting superiority and influence on the other").

United nonetheless argues that a federal question is raised because of assertions in the complaint that it "systematically underpaid Plaintiff in violation of the Agreement ***and*** applicable law," and that United allegedly "seeks to unlawfully retain millions of dollars as a windfall—even in the face of a U.S. Supreme Court decision and CMS action making clear the retention of such funds [is] unlawful[.]" (Defs' Mem. (DE 21) at 13-14[4] (emphasis in original) (quoting Compl ¶¶ 23, 59)). This argument fails on two levels. First, these references to federal law do not "mean[] that every legal theory supporting the claim requires the resolution of a federal issue." Burrell, 918 F.3d at 383. Rather, "each of the . . . claims is supported by a state-law theory that does not require recourse to federal law." Id. For example, the breach of contract claim is based on the "terms of the Agreement," and the Unfair and Deceptive Trade Practices claims are based on "failure to properly pay Plaintiff for services rendered." (Compl. ¶¶ 36, 54, 65).

Second, the determinative issue in the complaint is not United's violation of federal law, but rather whether the parties intended to tie a federal law standard into their Agreement or relationship, and if so under what conditions and circumstances. Because the referenced Supreme Court case and CMS action have already taken place, they are already settled law, and they are not themselves in dispute.[5] What is in dispute is whether and how they are tied to the reimbursement

---

[4] Throughout this order, page numbers specified in citations to filings are to the page number specified by the court's case management/electronic case filing (CM/ECF) system, and not the page number showing on the face of the underlying document, if any.

[5] In addition, and in the alternative, in that part where the complaint references and relies upon a federal law standard, the nature of the federal law standard is not an "actually disputed [and] substantial" federal issue, Vlaming, 10 F.4th at 306, where plaintiff is attempting to insert a settled standard into the context of the parties' Agreement and relationship. As in Burrell, plaintiff does not assert that the federal standard on which they rely "is unconstitutional in any of its relevant applications, or that the [federal agency] has exceeded its statutory authority or misapplied its own regulations in its oversight of [United]." Burrell, 918 F.3d at 385.

rates allegedly set forth in the parties' Agreement, which is a question of the parties' intent and the nature of their relationship to each other.

For example, United argues that plaintiff's "assertion that United implemented an 'Improper Payment Reduction' is premised on the hospital's interpretation of <u>Becerra</u> and the 340B Remedy Final Rule," referencing paragraphs 26-27 of the complaint. (Defs' Mem. (DE 21) at 14 (quoting Compl ¶ 26 (alleging that CMS's interpretation of <u>Becerra</u> led to its rule which declared "the Improper Payment Reduction to be an 'unlawful 340B Payment Policy'"); ¶ 27 (alleging that CMS made a "lump-sum payment to affected hospitals")). This argument, however, misses a critical step in the premise of plaintiff's claim set forth in the next two paragraphs of the complaint:

> Because [United's] actions <u>purport to derive</u> directly from CMS's admittedly unauthorized actions, [United's] actions also <u>violate the Agreement</u> and applicable law.
>
> As a result of [United's] <u>improper interpretation of the Agreement</u>, [United] has underpaid Plaintiff for Medicare Advantage members' 340B drugs for the Improper Discount Period.

(Compl. ¶¶ 28-29) (emphasis added); <u>see also</u> Compl. ¶ 24 (describing United's "faulty rationales" in "impos[ing] the Improper Payment Reduction under the Agreement's terms"). Thus, at bottom, plaintiff's claims are dependent upon this additional step, namely United's purported approach to determining its obligations under the Agreement, and United's interpretation of the Agreement.

United argues that the complaint "necessarily raises a federal issue, because to prevail on any of its causes of action seeking alleged underpayments based on the 340B Remedy Final Rule 'trigger,' [plaintiff] must prove that <u>its interpretation of the 340B Remedy Final Rule</u> is correct." (Defs' Mem. (DE 21) at 14) (emphasis added). It suggests plaintiff's claims would require a court to "decide whether the remedy [in the Final Rule] extended to MAOs" like itself, and to apply principles of "administrative law and vacatur." (<u>Id.</u> at 16). Neither showing, however, is required.

8

Plaintiff need only show that its interpretation of the Agreement to incorporate the 340B Remedy Final Rule standard is correct, and that United's interpretation of the Agreement to disregard that standard is incorrect.

Cases cited by United for comparison purposes are instructively distinguishable. For example, United cites N.Y.C. Health & Hospitals Corp. v. Wellcare of N.Y., Inc., 769 F. Supp. 2d 250 (S.D.N.Y. 2011), for the proposition that a federal question is presented where, "in order to prevail on its breach of contract claim, [the plaintiff] will have to prove that [the defendant's] failure to pay the [specified] amount violated Medicare law and regulations." Id. at 256. In that case, however, the plaintiff and the defendant had not entered into a contract with each other. Rather, the plaintiff alleged it was a "third-party beneficiary" when the defendant "entered into a contract with CMS that require[d]" payments to plaintiff, "according to the terms and conditions required by Medicare law and regulations." Id. at 256 (emphasis added). Further, the plaintiff alleged the defendant "breached its contract with CMS." Id. No such predicate CMS contract or Medicare law violation is alleged here. A much more pertinent case, by comparison, is the same district court's recent decision that a state court action for breach of an agreement between the parties, which allegedly "incorporated the pricing system and reimbursement methodology utilized by CMS and condemned in Becerra," did not raise a "substantial federal issue." NYU Langone Hosps. UnitedHealthcare, Ins. Co. v. Aetna Health, Inc., No. 24 CIV. 4803 (PKC), 2025 WL 252454, at *2 (S.D.N.Y. Jan. 21, 2025).

Plaintiff also cites to Sherr v. S.C. Elec. & Gas Co., 180 F. Supp. 3d 407, 417 (D.S.C. 2016), for the proposition that "since the plaintiff could not identify any source for the duty of care that the defendant owed to the plaintiff outside of a federal duty, the plaintiff's claim necessarily raised a federal issue." (Defs' Mem. (DE 21) at 15). In Sherr, however, the plaintiff identified "a

9

'license' and 'governmental regulations'" as the source of the duty of care, and the court determined this was "artful pleading," because the Federal Energy Regulatory Commission ("FERC") "set[s] the appropriate duty of care for dam operators" at issue in that case, under which "the licensee shall conform to such rules and regulations as the Commission may from time to time prescribe." Sherr, 180 F.Supp.3d at 417. In the instant case, by contrast, there is no such artful pleading, nor is there such an exclusive federal source of a duty of care, where the relationship between the parties is governed by a private contract, and United's alleged reimbursement obligations depend, necessarily and at least in part, on the terms of that Agreement. (See, e.g., Compl. ¶¶ 29, 72-74).

Similarly, United cites Old Dominion Elec. Coop. v. PJM Interconnection, LLC, 24 F.4th 271 (4th Cir. 2022). There, however, the plaintiff had "unsuccessfully sought to recover certain electricity generation costs from [the defendant, electrical grid operator] in an administrative proceeding" before FERC. Id. at 274. It "subsequently instituted the underlying litigation in Virginia state court, pursuing four putative state law claims against [the defendant] which seek the same relief unsuccessfully claimed before FERC." Id. The court held that this presented a substantial federal question because the suit sought "to have a court fix a special, reasonable tariffed rate unique to the plaintiff, [that] effectively challenges the relevant filed tariff in contravention of the filed-rate doctrine." Id. at 281. The court observed that "the type of relief sought here is incontrovertibly barred by the governing regulatory tariff." Id. at 283. By contrast, there is no such barred relief sought in the instant case, which arises from the parties' private Agreement. Plaintiff also does not seek relief that it had previously sought through an administrative or regulatory proceeding. Cases cited by plaintiff thus are inapposite.

In sum, United has not demonstrated that "every legal theory supporting [each] claim requires the resolution of a federal issue." Burrell, 918 F.3d at 383. Recognizing the court must be "cautious in exercising this form of jurisdiction because it lies at the outer reaches of § 1331," Mayor & City Council of Baltimore, 31 F.4th at 208, and that the court must "resolve doubts in favor of remand," Palisades Collections LLC, 552 F.3d at 336, plaintiff's motion must be granted under the circumstances of this case.

C.     Costs and Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Ultimately, federal question jurisdiction is foreclosed in the instant case based on the allegations in the complaint. Nonetheless, United presented objectively reasonable arguments in favor of removal. Therefore, each side will bear their own costs and fees.

**CONCLUSION**

Based on the foregoing, plaintiff's motion to remand (DE 17) is GRANTED. Pursuant to 28 U.S.C. § 1447(c), this case is REMANDED to the Superior Court of Nash County for further proceedings. The court declines to award costs and fees. The clerk is DIRECTED to transmit to the Superior Court of Nash County a certified copy of this order of remand, and to file on the docket herein a notice of such transmittal.

SO ORDERED, this the 28th day of July, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge